NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-4113

SNAY, ET AL., APPELLANTS, *v.* BURR, ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Snay v. Burr*, Slip Opinion No. 2021-Ohio-4113.]**

*Torts—Negligence—Duty of care—An adjacent landowner or an occupier of land adjacent to a public road does not owe a duty of care to an errant motorist who strikes an off-road object in the right-of-way, such as a mailbox, if the object does not affect the safety of ordinary travel on the regularly traveled portion of the road—Judgment affirmed.*

(No. 2020-1057—Submitted June 16, 2021—Decided November 24, 2021.)

APPEAL from the Court of Appeals for Huron County, No. H-19-016, 2020-Ohio-3828.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we consider whether an owner of land adjacent to a public road ("adjacent landowner") or an occupier of such land owes a motorist upon that road a duty of care with respect to a stationary object in the right-of-way

and if so, to what extent. This appeal specifically asks us to consider the liability, if any, of an adjacent landowner for catastrophic injuries sustained by a motorist as a result of the motorist's collision with the landowner's reinforced mailbox after hitting a patch of ice and leaving the ordinarily traveled portion of the road.

{¶ 2} Appellants, Cletus Snay ("Snay") and Kelly Snay, acknowledge that under existing Ohio law an adjacent landowner generally owes no duty of care to a motorist who leaves the regularly traveled portion of the road and strikes an object in the right-of-way. But they ask this court to recognize an exception to that general rule and to hold that an adjacent landowner *does* owe a duty of care to a motorist who unintentionally strays from the regularly traveled portion of the road if the landowner has consciously created a hazard in the right-of-way with knowledge of the danger it would present to such a motorist. For the following reasons, we decline to do so.

### I. Facts and procedural background

{¶ 3} The facts of this case are undisputedly tragic. On the afternoon of December 19, 2016, Snay was driving on Young Road—a two-lane country road— en route from his home in Norwalk to his workplace in Bellevue, a route he had driven without incident for five years. Although it was sunny and clear, Young Road was wet and icy, with patches of "black ice." Snay does not remember anything about that day other than driving toward his workplace.

{¶ 4} At approximately 2:44 p.m., Ohio Highway Patrol Trooper Robert Jones responded to a dispatch for a one-vehicle roll-over crash with a trapped occupant. When he arrived on the scene, Trooper Jones found Snay's rolled-over pickup truck off the north side of Young Road and emergency personnel treating Snay for visible head injuries. Upon investigation, Trooper Jones concluded that Snay's truck went off the right side of the road, began to fishtail, struck two mailboxes, and overturned. He determined that the truck began to roll after it struck the first mailbox—belonging to appellees, Matthew Burr ("Burr") and Diane

Burr—but before it hit the second mailbox. There are no known witnesses to the accident.

{¶ 5} As a result of the accident, Snay suffered damage to his C5–C7 discs, rendering him quadriplegic.

{¶ 6} The Burrs' mailbox was located one foot, nine inches from the edge of the road, within the right-of-way.[1] Burr installed the mailbox in 1996 after the Burrs' previous mailbox had been broken, following repeated instances of suspected vandalism.

{¶ 7} Before installing the mailbox, Burr obtained from his local post office a one-page document of guidelines for mailbox installation published by the United States Postal Service. He acknowledged that those guidelines were likely intended to promote traffic safety. He recalled that the guidelines recommended, but did not require, that a metal mailbox support be two-inch-diameter standard-steel or aluminum pipe and that the support be buried no more than 24 inches deep. For his mailbox support, however, Burr used an eight-inch-diameter metal pipe, which he buried 36 inches deep. Burr testified that he packed the support hole for the mailbox with old, powdered concrete mix, dirt, and stones, with the understanding that if it rained and the concrete mix was still good, it "might set up" and hold the support in place "a little stiffer." Although Burr testified that he wanted the new mailbox post to deter vandals, he was "fairly confident" that the mailbox post would "lay over" if someone hit it. Following the accident, the Burrs' mailbox post remained in the ground, while the second mailbox that Snay's truck hit was destroyed.

{¶ 8} The Snays' accident reconstructionist, James Crawford, agreed with Trooper Jones's assessment that Snay's truck began to roll over after striking the

---

1. "Right-of-way" is a "general term denoting land, property, or the interest therein, usually in the configuration of a strip, acquired for or devoted to transportation purposes. When used in this context, right-of-way includes the roadway, shoulders or berm, ditch, and slopes extending to the right-of-way limits under the control of the state or local authority." R.C. 4511.01(UU)(2).

Burrs' mailbox. But unlike Trooper Jones, who did not believe the Burrs' mailbox had any causative effect on the truck's rolling over, Crawford opined that "[t]he mechanism [that] caus[ed] the pickup to overturn in this case was the unyielding heavy metal pipe mailbox support." Crawford's report cited mailbox-support guidelines published by the United States Postal Service and by the American Association of State Highway and Transportation Officials with which the Burrs' mailbox support did not comply. He characterized the Burrs' mailbox support as "a dangerous hazard to motorists" and "a proximate cause for the roll-over" that resulted in Snay's injuries.

{¶ 9} The Snays sued the Burrs for compensatory damages for Snay's injuries and for appellant Kelly Snay's loss of consortium, as well as for punitive damages. They alleged that the Burrs were "negligent, reckless and careless in erecting their mailbox because it was supported by a thick, non-breakaway metal pipe." In support of their claim for punitive damages, they additionally alleged that the Burrs acted wantonly, recklessly, and with gross negligence.

{¶ 10} The Burrs moved for summary judgment, arguing that they owed no duty of care to Snay and that Snay's failure to control his vehicle on the regularly traveled portion of the road was the sole proximate cause of his injuries. The trial court granted the Burrs' motion, holding that Ohio law does not impose upon an adjacent landowner a duty of care to motorists who lose control of their vehicles, leave the ordinarily traveled portion of the road, and strike an off-road object in the right-of-way.

{¶ 11} In a two-to-one decision, the Sixth District Court of Appeals affirmed the trial court's entry of summary judgment. The majority agreed with the trial court that the Burrs owed no duty of care to Snay, but it also held that the record did not support a finding that the Burrs' conduct was a proximate cause of Snay's injuries. Judge Mayle dissented, concluding that under the facts of this case the Burrs owed Snay a duty to install their mailbox in a reasonably safe manner and

that reasonable minds could differ as to whether the Burrs' construction of their mailbox was a proximate cause of Snay's injuries.

{¶ 12} This court accepted the Snays' discretionary appeal, which presents three propositions of law. *See* 160 Ohio St.3d 1438, 2020-Ohio-4938, 155 N.E.3d 940. In their first proposition of law, the Snays argue that an adjacent landowner owes a duty of care to an errant motorist who strikes an off-road hazard in the right-of-way if the landowner has consciously created the hazard with knowledge of the danger it may present to a motorist who veers off the road. In their second proposition of law, they ask this court to hold that the open-and-obvious doctrine does not apply when an adjacent landowner consciously places a hazard in a right-of-way in close proximity to the traveled portion of the highway. And in their third proposition of law, the Snays ask this court to hold that their accident reconstructionist's opinion that Snay's truck would not have overturned but for its collision with the Burrs' mailbox was admissible and sufficient to demonstrate a genuine issue of material fact regarding proximate cause. Because the Snays' first proposition of law is dispositive of this appeal, we need not reach the second and third propositions of law.

## II. Analysis

### A. The foundational element of duty

{¶ 13} Other than their claim for punitive damages, the Snays' claims sound in negligence. Liability for negligence arises from an injury caused by a defendant's failure to discharge a duty owed to the injured plaintiff. *Di Gildo v. Caponi*, 18 Ohio St.2d 125, 127, 247 N.E.2d 732 (1969). To prove actionable negligence, a plaintiff must establish (1) the existence of a legal duty owed to the injured party, (2) the defendant's breach of that duty, and (3) that an injury proximately resulted from the defendant's breach of duty. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989), citing *Di Gildo*.

**{¶ 14}** The Snays' first proposition of law concerns the foundational element of duty. "A person's failure to exercise ordinary care in doing or failing to do something will not amount to actionable negligence unless such person owed to someone injured by such failure a duty to exercise ordinary care." *United States Fire Ins. Co. v. Paramount Fur Serv., Inc.*, 168 Ohio St. 431, 156 N.E.2d 121 (1959), paragraph three of the syllabus. *See also Gedeon v. East Ohio Gas Co.*, 128 Ohio St. 335, 338, 190 N.E. 924 (1934) ("before failure to use [ordinary care] can be made the basis for recovery it must appear that the plaintiff falls within the class of persons to whom a duty of care was owing"). In other words, if there is no duty then there can be no liability for negligence. *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989). Unlike the question whether a defendant has properly discharged an applicable duty of care, which is generally a question of fact for the jury, *see Gedeon* at 338, the question whether a duty exists to begin with is a question of law for the court, *Mussivand* at 318.

**{¶ 15}** In the context of Ohio tort law, "[d]uty * * * refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989), citing *Baltimore & Ohio Southwestern Ry. Co. v. Cox*, 66 Ohio St. 276, 64 N.E. 119 (1902). "[A] defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 645, 597 N.E.2d 504 (1992). "As a society, we expect people to use reasonable precautions against the risks that a reasonably prudent person would anticipate." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 24, citing *Commerce & Industry Ins. Co.* at 98. An injury is foreseeable if a reasonably prudent person under the same or similar circumstances as the defendant should have known that the conduct in question was likely to result in injury to the plaintiff or to someone

6

in a like situation. *Commerce & Industry Ins. Co.* at 98. Foreseeability alone, however, is not always sufficient to establish a duty of care. *Estates of Morgan v. Fairfield Family Counseling Ctr.*, 77 Ohio St.3d 284, 293, 673 N.E.2d 1311 (1997), *superseded by statute on other grounds as stated in Dillon v. OhioHealth Corp.*, 2015-Ohio-1389, 31 N.E.3d 1232 (10th Dist.).

{¶ 16} The only relationship between Snay and the Burrs stems from Snay's status as a motorist on the public road adjacent to the Burrs' property and on the public right-of-way that extended over a portion of that property. To assess whether the Burrs owed a duty of care to Snay, we therefore look to precedent that addresses the duties owed to motorists on public roads by adjacent landowners or occupiers of adjacent land, whether they be political subdivisions, utility companies, or private persons.

### B. Whether an adjacent landowner or an occupier of land adjacent to a public road owes a duty to motorists with respect to an off-road object in a right-of-way depends on whether the object affects ordinary travel on the regularly traveled portion of the road

{¶ 17} In *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Rd. Comm.*, 63 Ohio St.3d 318, 587 N.E.2d 819 (1992), this court addressed two questions of law certified by the United States Court of Appeals for the Sixth Circuit. In *Manufacturer's*, a fatal automobile accident occurred at a rural intersection where corn growing in the right-of-way obstructed motorists' vision of cross-traffic at the two-way stop. The plaintiffs sued the township where the intersection was located and the occupier of the adjacent land on which the corn was growing. In an appeal from the district court's entry of summary judgment in favor of the defendants, the federal court of appeals certified to this court two questions of Ohio law concerning the duties owed to motorists on public roads by the township and by the occupier of the adjacent land.

{¶ 18} We first addressed the township's duty, which arose from the statutory requirement in R.C. 2744.02(B)(3) that a township keep its highways open, in repair, and free from nuisance.[2] The plaintiffs argued that the extension of the cornfield into the right-of-way constituted a nuisance because it rendered the intersection unsafe by obstructing motorists' sightlines. Addressing the scope of the township's duty, we stated that "the focus should be on whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled portion of the road." *Manufacturer's* at 322. In other words, the focus was on the condition's effect on ordinary traffic; the township's duty required it to keep the right-of-way "free from * * * conditions that directly jeopardize[d] the safety of traffic on the highway." *Id.* We thus held that "a permanent obstruction to visibility in the right-of-way, which renders the regularly travelled portions of the highway unsafe for the usual and ordinary course of travel, can be a nuisance for which a political subdivision may be liable." *Id.* at 323.

{¶ 19} We then turned to the second certified question, which concerned the duty of the occupier of the adjacent property who was growing corn in the right-of-way. We began by noting that the right-of-way, having been appropriated for highway purposes, was under the control of the state or local government and therefore the occupier of the land was not free to use it as he pleased. *Id.* We stated that growing crops in a right-of-way serves no highway purpose and that if the crops create a hazard to safe travel on the highway by obstructing motorists' vision, then the usage is also inconsistent with the right-of-way's purpose. *Id.* at 324. We held that "where the abutting landowner or occupier uses the highway right-of-way in a

_____

2. The General Assembly subsequently amended R.C. 2744.02(B)(3) to limit political-subdivision liability for injuries and deaths to those caused by "an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so." *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 30.

8

manner inconsistent with a highway purpose, and where such usage constitutes an unreasonable hazard to the users of the highway, the landowner or occupier may be liable for damages proximately caused by the improper use of the right of way." *Id.*

{¶ 20} The Snays suggest that recognition of a duty under the facts of this case would not conflict with this court's holding in *Manufacturer's*, because, they contend, under the holding in *Manufacturer's*, an adjacent landowner or an occupier of land adjacent to a public road owes a broader duty to motorists than does the political subdivision to which the road and right-of-way are dedicated. They argue that while this court limited the township's duty to keeping the right-of-way free from any obstruction that "renders the regularly travelled portions of the highway unsafe for the usual and ordinary course of travel," *id.,* 63 Ohio St.3d 318, 587 N.E.2d 819, at paragraph one of the syllabus, we did not use similar limiting language with respect to the duty owed to motorists by the adjacent landowner or occupier of the adjacent land. Instead, the Snays posit, this court held that a landowner's or occupier's duty to a motorist arises from the landowner's or occupier's use of the right-of-way "in a manner that is inconsistent with a highway purpose, and where such usage constitutes an unreasonable hazard to the users of the highway," *id.* at paragraph two of the syllabus. They maintain that "an unreasonable hazard to the users of the highway" encompasses an off-road hazard that a motorist might encounter upon veering off the road, even if the hazard does not endanger ordinary travel on the regularly traveled portion of the road. We disagree with the Snays' reading of *Manufacturer's*.

{¶ 21} As the Snays concede, *Manufacturer's* is factually different from this case because the accident in *Manufacturer's* occurred on the regularly traveled portion of the road and in the ordinary course of travel through the intersection. Further, there was no dispute in *Manufacturer's* that the corn growing in the right-of-way rendered ordinary travel on the road unsafe by obscuring motorists'

visibility of cross-traffic, which ultimately resulted in the fatal crash. Because of those undisputed facts, there was no reason for the court to consider whether the occupier's duty would also extend to an off-road condition that did not render ordinary travel on the road unsafe but which might present a hazard to a motorist who leaves the regularly traveled portion of the road. Review of the opinion in *Manufacturer's* makes clear, however, that this court focused on an obstruction's effect on the safety of ordinary on-road travel with respect to both the township's duty to motorists and the duty owed by an occupier of adjacent land. *See id.* at 324 ("if the crops obstruct a driver's vision in a way that creates a hazard to safe travel on the highway, the usage is inconsistent with the right-of-way's purpose"). We therefore reject the Snays' argument that this court's holding in *Manufacturer's* recognizes a duty to motorists owed by an adjacent landowner or an occupier of land adjacent to a public road with respect to obstructions in the right-of-way that do not affect the safety of ordinary travel on the road.

{¶ 22} Since this court's decision in *Manufacturer's*, we have consistently considered the effect that an object or obstruction in a right-of-way has on the ordinary use of the roadway when determining the existence of duties owed to motorists. *See, e.g., Turner v. Ohio Bell Tel. Co.*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158; *Link v. FirstEnergy Corp.*, 147 Ohio St.3d 285, 2016-Ohio-5083, 64 N.E.3d 965.

{¶ 23} Akin to the facts here, *Turner* involved a motorist's off-road collision with a stationary, man-made object in the right-of-way. In *Turner*, an automobile passenger died when the driver inadvertently drove off the road in darkness and fog and struck a utility pole located in a grassy portion of the right-of-way. The administrator of the passenger's estate sued the utility companies for negligently placing, maintaining, and using the utility pole in such close proximity to the road. This court held that the trial court properly granted summary judgment in favor of the utility companies on the plaintiff's negligence claim.

**{¶ 24}** Although *Turner* involved the duty of public utilities vis-à-vis the placement of a utility pole, we noted that our holding in that case was consistent with "the approach that we have taken regarding liability of political subdivisions and private landowners for injuries caused by objects within the right-of-way of the road," *id.* at ¶ 22, citing *Strunk v. Dayton Power & Light Co.*, 6 Ohio St.3d 429, 453 N.E.2d 604 (1983), and *Manufacturer's*, 63 Ohio St.3d 318, 587 N.E.2d 819. We reiterated that the focus, with respect to the duties owed to motorists by political subdivisions and by private landowners or occupiers, is not on the location of an off-road object but on whether that object "makes the roadway unsafe for the *usual and ordinary course of travel*." (Emphasis sic.) *Id.* And we held that "when a vehicle collides with a utility pole located off the improved portion of the roadway but within the right-of-way, a public utility is not liable, as a matter of law, if the utility has obtained any necessary permission to install the pole and the pole does not interfere with the usual and ordinary course of travel." *Id.* at ¶ 21. *See also Link* at ¶ 39 ("Absent evidence of interference with the usual and ordinary course of travel on the roadway, [the utility companies] did not have a duty to remove off-road objects within the public right-of-way that might come in contact with wayward vehicles").

**{¶ 25}** Recognizing that "a motorist is not free to drive on the right-of-way as he or she pleases," *Turner*, 118 Ohio St.3d 215, 2008-Ohio-2010, 887 N.E.2d 1158, at ¶ 17, we reasoned that the off-road utility pole did not interfere with the public's use of the road, because "a motorist properly using the usual and ordinary course of travel would not come into contact with" it, *id.* at ¶ 26. In reaching this decision, we cited with approval *Ramby v. Ping*, 2d Dist. Greene No. 93-CA-52, 1994 WL 124829 (Apr. 13, 1994), in which the Second District Court of Appeals "declined to extend *Manufacturer's* to impose a duty on adjacent landowners and municipalities to keep a right-of-way free of objects that pose a danger to vehicles

that may foreseeably leave the traveled portion of the roadway." *Turner* at ¶ 23. We also quoted the Second District's rationale:

> "No precedent exists for imposing a duty on public or private landowners to remove an off-road hazard that renders only off-road travel unsafe, unless the off-road travel is shown to be an aspect of the usual and ordinary course of travel on the roadway. Otherwise, every tree and solid fixed object on roadsides and road-shoulders would impose potential liability on public and private landowners for collisions occurring whenever a vehicle was driven off-road and into the object."

*Turner* at ¶ 23, quoting *Ramby* at *3. *See also Floering v. Roller*, 6th Dist. Wood No. WD-02-076, 2003-Ohio-5679, ¶ 18 (landowner owed no duty to motorist who struck a tree in the right-of-way, because the tree did not obstruct the motorist's vision and could "only be a hazard when a vehicle leaves the highway").

{¶ 26} Here, the Burrs' mailbox did not render ordinary travel on the regularly traveled portion of Young Road unsafe. To the extent the mailbox presented a hazard to motorists, it did so only with respect to those motorists who errantly left the road.

### C. An adjacent landowner or occupier of land adjacent to a public road does not owe a duty of care to motorists with respect to a hazard in the right-of-way that does not affect the safety of the ordinary course of travel on the road

{¶ 27} Despite this court's consistent holdings that an adjacent landowner or an occupier of land adjacent to a public road owes no duty to motorists regarding an off-road hazard that does not affect the safety of ordinary on-road travel, the Snays encourage us to recognize an exception to that rule. They argue that Burr's

"unreasonably dangerous construction" of his mailbox, with knowledge that the construction was inconsistent with the nonbinding guidelines published by the United States Postal Service, gave rise to a duty of care to motorists who might foreseeably leave the road and strike the mailbox.

{¶ 28} As support for their proposed exception, the Snays cite a footnote from *Ramby*. After the Second District determined in *Ramby* that the city of Beavercreek did not have a duty to remove an off-road hazard that rendered only off-road travel unsafe, 2d Dist. Greene No. 93-CA-52, 1994 WL 124829 at *3, the appellate court stated that the plaintiff had identified no authority for subjecting the adjacent landowner to a greater duty to maintain the right-of-way free from nuisance than that imposed upon the city to which the right-of-way had been dedicated, *id.* at *5. In a footnote, however, the court noted: "The only distinction we can envision would be if the owner of the adjacent property had actual or constructive knowledge of the nuisance, while the municipality had no such notice." *Id.* at fn. 2.

{¶ 29} The Snays' reliance on the *Ramby* footnote is unwarranted. First, the footnote was dicta and therefore had no bearing on the legal holding in that case. Indeed, the footnote itself also states, "Notice is not an issue in the case before us." *Id.* Second, as far as we can discern, no Ohio appellate court has applied the exception that the Second District "envisione[d]" in the footnote.[3] Finally, we reject the Snays' characterization of the *Ramby* footnote as articulating an exception to the settled rule regarding an adjacent landowner's duty to a motorist with respect to an object in the right-of-way.

---

3. The Sixth District has cited *Ramby* for the proposition that "there is no authority for imposing a greater duty on the adjacent landowner to remove an off-the-road hazard that did not affect travel upon the highway unless the landowner had actual or constructive knowledge of the danger posed to travelers on the highway." *Floering*, 6th Dist. Wood No. WD-02-076, 2003-Ohio-5679, at ¶ 19. But as in *Ramby*, knowledge was not at issue in *Floering*.

**{¶ 30}** The footnote in *Ramby* focuses on knowledge of a nuisance, which we have defined in this context as an object or condition that renders a road unsafe for the usual and ordinary course of on-road travel. *See Manufacturer's*, 63 Ohio St.3d at 322, 587 N.E.2d 819; *Strunk*, 6 Ohio St.3d at 430, 453 N.E.2d 604. The Second District recognized as much in its discussion of the city's duty in *Ramby*. *See id.* at *3. Although knowledge might affect exposure to liability, it is irrelevant to whether an object or condition constitutes a nuisance. *See Harp v. Cleveland Hts.*, 87 Ohio St.3d 506, 512, 721 N.E.2d 1020 (2000) (unsound tree limb that fell from the city's adjacent property onto a motorist's vehicle traveling along a public road, killing the driver, constituted a nuisance, but city's liability was contingent upon its having actual or constructive knowledge of the nuisance). If an adjacent landowner or occupier of land adjacent to the road has knowledge of a nuisance— a condition that jeopardizes the safety of traffic *on the ordinarily traveled portion of the road*—in the right-of-way, while the political subdivision to which the right-of-way was dedicated does not, the landowner or occupier might be liable for negligence even if the political subdivision may not. But in any case, first there must be a condition or obstruction that jeopardizes the safety of traffic on the ordinarily traveled portion of the road.

**{¶ 31}** The Snays also argue that their proposed exception to the general rule is consistent with 2 Restatement of the Law 2d, Torts, Section 368, at 268 (1965), which states:

> A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the

14

highway, is subject to liability for physical harm thereby caused to persons who

> (a) are traveling on the highway, or

> (b) foreseeably deviate from it in the ordinary course of travel.

{¶ 32} This court has not previously adopted that Restatement section, and we decline to do so now, in part because we do not read Section 368 as imposing a duty on the Burrs under the facts of this case.

{¶ 33} Section 368 refers to a landowner's or occupier's knowledge that an artificial condition "involves an unreasonable risk to others accidentally brought into contact with [it] *while traveling with reasonable care upon the highway*." (Emphasis added.) *Id.* As we have already determined, the Burrs' mailbox did not involve a risk of harm to ordinary travel on Young Road.

{¶ 34} Comment e to Section 368 states that to the extent the Restatement section protects motorists who leave the regularly traveled portion of the road, it applies only "to those who *reasonably and expectably* deviate from the highway and enter upon the abutting land *in the ordinary course of travel*." (Emphasis added.) Section 368 distinguishes between deviations "which are normal incidents of travel and those which are not." *Id.* at Comment g. Many courts that have adopted Section 368 have rejected the notion that a negligent deviation from the regularly traveled portion of a road is a normal incident of travel that must be foreseen and guarded against. *See, e.g., Bergen v. Texas-New Mexico Power Co.*, 130 S.W.3d 379, 381 (Tex.App.2004) (deviation from the road following a tire blowout was not in the ordinary course of travel); *Soares ex rel. Estate of Soares v. George A. Tomasso Constr. Corp.*, 66 Conn.App. 466, 469-474, 784 A.2d 1041 (2001) (drunk driver's deviation from the road was not in the ordinary course of travel); *McAllen v. De La Garza*, 898 S.W.2d 809, 809-812 (Tex.1995) (intoxicated

driver who fell asleep and veered off the road "was not travelling with reasonable care upon the highway nor was his deviation in the ordinary course of travel"); *Kavanaugh v. Midwest Club, Inc.*, 164 Ill.App.3d 213, 517 N.E.2d 656 (1987) (no duty owed to driver who deviated from the highway during an epileptic seizure and drove into a retention pond). In *Kavenaugh*, the court stated that for a duty to attach, there must be "facts that demonstrate that the condition of the roadway is such that a vehicle is likely to deviate from it in the ordinary course of travel and come in contact with the artificial condition." *Id.* at 218.

{¶ 35} The Sixth District's opinion in *Swaisgood v. Puder*, 6th Dist. Erie No. E-06-033, 2007-Ohio-307, offers an example of a deviation from the regularly traveled portion of a road that was part of the ordinary course of travel. There, a tractor-trailer collided with an off-road utility pole located at an intersection adjacent to a truck stop. The Sixth District acknowledged that a utility company may not place its poles within a right-of-way in a manner that will unreasonably interfere with the public's reasonable and ordinary use of the road for travel. *Id.* at ¶ 19. The plaintiff in *Swaisgood* presented expert testimony that the lack of effective clearance for large vehicles (like those that regularly used the truck stop) forced those vehicles to either encroach into adjacent lanes of traffic or to travel on the unpaved area of the right-of-way where the utility pole was located. *Id.* at ¶ 22-23. The expert testified that the utility pole, although located off the road itself, was " 'within the area that large vehicles would typically travel.' " *Id.* at ¶ 23. In reversing the trial court's entry of summary judgment in favor of the utility company, the court of appeals held that the utility pole was located in the unpaved path "regularly traversed by non-errant vehicles." *Id.* at ¶ 23, 35.

{¶ 36} Unlike in *Swaisgood*, in this case there is no suggestion that the right-of-way beyond the paved portion of Young Road was typically used for ordinary travel on the road. To the contrary, Snay testified that he had traveled on Young Road without incident and without leaving the regularly traveled portion of

the road on his route to and from work for five years. A vehicle traveling ordinarily and with due care on the road would not come in contact with the Burrs' mailbox.

{¶ 37} A deviation by a motorist who careens off the road after hitting a patch of black ice is neither expected nor a normal incident of travel. The motorist is responsible for keeping his vehicle under control and on the appropriate side of the road, regardless of weather conditions. *Oechsle v. Hart*, 12 Ohio St.2d 29, 34, 231 N.E.2d 306 (1967). "Skidding upon wet or icy roadway pavement," as Snay did here, "is a circumstance within the power of motorists to prevent." *Id.* And adjacent landowners, like the Burrs, are entitled to presume that motorists will observe the law and exercise ordinary care. *See Swoboda v. Brown*, 129 Ohio St. 512, 524, 196 N.E. 274 (1935).

{¶ 38} The Burrs' mailbox did not affect the safety of ordinary travel on the regularly traveled portion of Young Road. And Burr's knowledge that the mailbox's construction was inconsistent with nonbinding postal-service guidelines does not warrant a departure from the general rule that the duty to motorists owed by an adjacent landowner or an occupier of land adjacent to the road extends only to conditions in the right-of-way that render ordinary travel on the regularly traveled portion of the road unsafe. This is true even though there existed the possibility that a vehicle might negligently veer off the regularly traveled portion of the road and hit the mailbox.

### III. Conclusion

{¶ 39} Because the Burrs' mailbox did not present a hazard to ordinary travel on the regularly traveled portion of the road and because Snay's deviation from the regularly traveled portion of the road did not constitute a normal incident of ordinary travel, we conclude that the Burrs did not owe a duty of care to Snay with respect to their mailbox. And because there can be no liability in negligence without a duty of care, we affirm the judgment of the Sixth District Court of Appeals.

Judgment affirmed.

KENNEDY, FISCHER, DEWINE, and STEWART, JJ., concur.

DONNELLY, J., dissents, with an opinion joined by BRUNNER, J.

_____

**DONNELLY, J., dissenting.**

{¶ 40} This case was decided on summary judgment, which requires a showing "that there is no genuine issue as to any material fact and * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). One aspect of deciding a case on summary judgment that has always concerned me is relevant here: the presence of a cogent, well-reasoned dissent. In this case, one of the three judges sitting on the court of appeals dissented. Doesn't that establish that reasonable minds cannot come to but one conclusion? And doesn't the mere existence of this dissent prove that reasonable minds cannot come to but one conclusion—especially if another justice joins it?

{¶ 41} In this tragic case, appellant Cletus Snay drove over a patch of ice, veered off the road, and struck a mailbox, which caused his pickup truck to flip. The injuries he suffered rendered him a quadriplegic. The issue before us is whether this accident and the resulting injuries were sufficiently foreseeable such that whether the landowner owed Snay a duty of care is a question for the jury.

{¶ 42} Appellee Matthew Burr constructed a mailbox in the right-of-way, which the majority opinion described as "land * * * devoted to transportation purposes." Majority opinion, ¶ 6, fn 1. The supporting metal pipe for Burr's mailbox was eight inches in diameter; the guidelines that Burr obtained from his local post office recommend not exceeding two inches in diameter. This eight-inch-diameter pipe was buried at least 36 inches deep; the guidelines recommend that the pipe be buried no more than 24 inches deep. Finally, Burr poured concrete

mix into the area around the pipe "with the understanding that if it rained and the concrete mix was still good, it 'might set up' and hold the support in place 'a little stiffer.' " *Id.* at ¶ 7, quoting Burr's testimony. In short, as the majority acknowledges, despite Burr's understanding that the guidelines "were likely intended to promote traffic safety," he intentionally exceeded the guidelines in an effort to "deter vandals." *Id.* at ¶ 7.

{¶ 43} The guidelines are designed to ensure that a mailbox will "lay over" when struck. By exceeding them, Burr constructed a mailbox so strong that when struck by Snay's pickup truck, the truck rolled over instead of the mailbox laying over. In my opinion, these facts could justify a jury's concluding that Burr owed a duty of care to Snay.

{¶ 44} The trial court, the court of appeals, and this court have concluded that Burr owed no duty to the Snays. Those conclusions are inconsistent with this court's holding in *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Rd. Comm.*, 63 Ohio St.3d 318, 587 N.E.2d 819 (1992). In that case, we stated that "[w]here an abutting landowner or occupier uses the highway right-of-way in a manner inconsistent with a highway purpose, and where such usage constitutes an unreasonable hazard to users of the highway, the landowner or occupier may be liable for damages proximately caused by the improper use of the right-of-way." *Id.* at paragraph two of the syllabus. The court was unanimous with regard to the duty of landowners and occupiers to the users of highways, and the only concern raised by a justice who dissented in part related to how the holding might affect the liability of political subdivisions. *Id.* at 324 (Moyer, C.J., concurring in part and dissenting in part). *Manufacturer's* clearly stands for the proposition that landowners can be held to owe a duty of care to motorists based on creating an "unreasonable" hazard in the right-of-way.

{¶ 45} It does not take great imagination to see how the facts of this case could give rise to a duty of care on the part of Burr. He is the abutting landowner.

He constructed a mailbox in the right-of-way, which could be deemed inconsistent with a highway purpose. The mailbox he constructed was essentially an immovable object designed to deter vandals. His purpose in constructing the mailbox was not related to transportation and could be deemed an improper use of the right-of-way. An immovable object in the right-of-way could be deemed an unreasonable hazard.

{¶ 46} It is quite clear that Burr did not build an ordinary mailbox: he consciously constructed a mini fortress to protect his mailbox. The Snays essentially argue that after doing so, Burr is not entitled to assert that the mailbox's causing harm was unforeseeable and therefore he owes no duty to the public. I agree. The intentional construction of an immovable object in the right-of-way raises an issue of foreseeability. For this reason alone, summary judgment was improper.

{¶ 47} Moreover, the Snays presented testimony from an accident reconstructionist that the mailbox caused Snay's truck to roll over and that an ordinary, unreinforced mailbox would not have done so. Burr presented evidence that his mailbox did not cause the truck to roll over. This contested fact should be resolved by a jury.

{¶ 48} Finally, the public policy of this state that relates to foreseeability and whether a duty of care is owed ought not to condone the construction of virtually indestructible mailboxes in the right-of-way. I am concerned that some might read the majority opinion as sanctioning the construction of mailboxes that are even stronger and more likely to cause harm than Burr's, without regard to foreseeable consequences. That slippery slope may result in death the next time a driver inadvertently veers off the road and strikes an intentionally indestructible mailbox.

{¶ 49} The Snays may or may not be able to prove their case, but they should have the opportunity to try. There are issues of material fact that are

disputed.  It is obvious that reasonable minds cannot come to but one conclusion about this case.  Summary judgment was improper.  I dissent.

BRUNNER, J., concurs in the foregoing opinion.

_____

Nurenberg, Paris, Heller, & McCarthy Co., L.P.A., Kathleen J. St. John, Jamie R. Lebovitz, Jeffrey M. Heller, and Brian W. Parker, for appellants.

Hanna, Campbell & Powell, L.L.P., Douglas G. Leak, Kenneth A. Calderone, and Anne M. Markowski, for appellees.

_____