[Cite as *Perez-Herrera v. Now Clinic*, 2023-Ohio-173.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

ANTONIO BONAFACIO PEREZ-HERRERA

      Appellant

      v.

NOW CLINIC, et al.

      Appellees

C.A. No.     21AP0018

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2019-CVC-A 000107

DECISION AND JOURNAL ENTRY

Dated: January 23, 2023

TEODOSIO, Presiding Judge.

{¶1}   Appellant, Antonio Bonafacio Perez-Herrera, appeals from a judgment of the Wayne County Court of Common Pleas that granted summary judgment to Appellees, Walmart Inc. and Wal-Mart Super Stores, East, L.P. (collectively "Walmart"), on his negligence claim, concluding that Walmart owed no legal duty to Mr. Perez-Herrera.  This Court reverses and remands.

I.

{¶2}   This appeal stems from a workplace injury that Mr. Perez-Herrera alleges resulted in serious and permanent physical injuries because of the negligence of others in treating and/or failing to properly treat his initial injury.  Although this case involves complicated facts and multiple defendants, the only defendant at issue in this appeal is Walmart, as the owner and operator of a pharmacy in New Philadelphia, Ohio.  This Court will focus on the evidence relevant to the sole issue on appeal: whether Walmart owed a duty to Mr. Perez-Herrera.

**{¶3}** Moreover, because this appeal involves a summary judgment granted in favor of defendant Walmart, this Court must construe the evidence in the record in favor of the nonmoving party, Mr. Perez-Herrera. *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993). "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485 (1998), citing *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).

**{¶4}** Mr. Perez-Herrera is an immigrant from Guatemala who is not fluent in English. On Friday, December 22, 2017, he smashed the index finger on his left hand while on a break from his job at Ohio Farms Packing Company, a slaughterhouse in Creston, Ohio. Because he and several other employees were transported to and from work by his employer, his employer also transported him to Now Clinic ("the clinic"), an urgent care clinic in Wooster, Ohio.

**{¶5}** A physician's assistant treated Mr. Perez-Herrera by examining his finger and stitching his severed fingernail down to the nail bed. The clinic also x-rayed his finger to determine whether it was broken, but a radiologist did not read his x-ray until after he had left the clinic. The physician's assistant looked at the x-ray, however, and concluded that the finger was not broken. The clinic released Mr. Perez-Herrera without a prescription for medication or instructions that he would need to be treated with medication. He was transported by his employer back to Ohio Farms, where he waited for his shift to end so he and other employees could be transported home.

**{¶6}** After Mr. Perez-Herrera left the clinic, a radiologist read his x-ray and determined that his finger was broken. A nurse from the clinic later called in a prescription for an antibiotic, Augmentin, to the Walmart pharmacy in New Philadelphia. Because Mr. Perez-Herrera used the name and identification card of a man named Paul Lujan with his employer and when he went to

the clinic, the clinic prescribed the antibiotic in the name of Paul Lujan. The clinic had not gathered contact information for Mr. Perez-Herrera (the man it knew as Paul Lujan), so it called Ohio Farms and spoke to someone there before Mr. Perez-Herrera had gone home for the weekend. An Ohio Farms employee who is fluent in English and Spanish informed him that he would have a medication ready at Walmart the following day, a Saturday.

{¶7} It is not clear whether the clinic contacted Walmart that same day about the prescription. According to the physician's assistant, he directed a nurse that afternoon to call in the prescription. The nurse later testified that, although she had no documentation that she had done so, it would have been her regular practice to call Ohio Farms about where to send the prescription and for the employer to notify its Spanish-speaking employee about it, and that she would have called the pharmacy about the prescription the same day and left a message on their voicemail.

{¶8} Mr. Perez-Herrera went to Walmart the following day, a Saturday, at approximately 10:00 a.m. He had been to the store before but had always paid with cash and had never had a prescription filled there, so his contact information was not in Walmart's computer database. He went to the prescription pick-up window, showed an Ohio identification card in the name of Paul Lujan, and stated that he was there to pick up some medicine. A Walmart employee checked the computer and informed him that there was no record of a prescription for Paul Lujan. After he asked why the medicine was not ready for him, the employee checked the computer again and assured him that there was no prescription for him in their system. The Walmart employee did not ask him for his contact information or suggest that he check back later, and he left the store.

{¶9} The evidence is not disputed that, more than one hour after Mr. Perez-Herrera left Walmart on Saturday, the pharmacy received a voicemail message from the clinic about a

prescription for Augmentin for a man named Paul Lujan. Walmart filled the prescription late that afternoon. Walmart had no contact information for the man, so it did not inform him that his prescription was ready. Mr. Perez-Herrera did not return to Walmart and, consequently, did not take the prescribed antibiotic.

{¶10} Over the next two days, Mr. Perez-Herrera's physical condition worsened, but he did not receive medical treatment until he was taken to the hospital on Monday, December 25, 2017. By that time, he had developed a severe infection that had spread through his body and led to the amputation of both his legs below the knees and the partial amputation of several of his fingers.

{¶11} Mr. Perez-Herrera later filed a medical malpractice action against numerous persons and entities associated with the medical treatment he received after he sustained his initial finger injury. Through an amended complaint, he added Walmart as a defendant. The negligence claim against Walmart alleged that the pharmacy had breached its duty to him by failing to fill his antibiotic prescription in a timely manner and, as a result, he "suffered a terrible infection which spread to multiple parts of his body causing multiple amputations." Through discovery, it became apparent that Mr. Perez-Herrera had two theories for his negligence claim against Walmart: (1) that Walmart received his prescription on Friday and was negligent for failing to timely fill it for him before he arrived on Saturday, and (2) that, even if Walmart did not receive the prescription until after he left the pharmacy, it breached its duty to him by failing to take further action including gathering his contact information.

{¶12} Walmart later moved for summary judgment on Mr. Perez-Herrera's claim against it, asserting that it could not be liable to Mr. Perez-Herrera because it owed no duty to him. The

trial court agreed that Walmart owed no duty to Mr. Perez-Herrera and granted it summary judgment. Mr. Perez-Herrera appeals and raises one assignment of error.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO WALMART ON THE GROUND THAT ITS PHARMACY OWED NO DUTY TO [MR. PEREZ-HERRERA].

{¶13} Mr. Perez-Herrera's assignment of error is that the trial court erred in granting summary judgment to Walmart on his negligence claim against it. To establish his claim of negligence, Mr. Perez-Herrera would be required to "establish (1) the existence of a legal duty owed to [him], (2) the defendant's breach of that duty, and (3) that an injury proximately resulted from the defendant's breach of duty." *Snay v. Burr*, 167 Ohio St.3d 123, 2021-Ohio-4113, ¶ 13.

{¶14} Walmart moved for summary judgment, asserting that Mr. Perez-Herrera could not prove that Walmart owed a duty to him. In addition to informing the court of the basis for its motion, Walmart bore "the initial burden of * * * identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the [duty] element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). This burden cannot be satisfied by conclusory assertions but must "specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id*.

{¶15} Pursuant to Civ.R. 56(C), summary judgment was appropriate if:

(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence

most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶16} Walmart moved for, and was granted, summary judgment, based on its assertion that it owed no duty to Mr. Perez-Herrera because, at the time he came to the pharmacy, it had not yet received the Augmentin prescription for him, and, because he had never filled a prescription at Walmart before, his contact information was not in their computer system. Walmart pointed to evidence to support those factual assertions and argued, as a matter of law, that it owed no duty to someone who had no prior relationship with the pharmacy and had no prescription record in its computer system.

{¶17} As developed in his opposition to summary judgment and his brief on appeal, Mr. Perez-Herrera asserted that Walmart was not entitled to summary judgment because: (1) he presented evidence that the clinic may have sent the prescription to Walmart late Friday afternoon, before he came to the pharmacy on Saturday morning; and that (2) even if Walmart did not receive the prescription until after he left on Saturday, he presented evidence that Walmart owed him a duty as a customer who came to the pharmacy, claiming that a prescription should be waiting for him. We will address each of these arguments separately.

Receipt of the Prescription on Friday

{¶18} Although Walmart presented evidence that it had no prior relationship with Mr. Perez-Herrera and did not receive the prescription before he came to the store on Saturday morning, Mr. Perez-Herrera's brief in opposition to summary judgment pointed to evidence that Walmart may have received the prescription before he came to the pharmacy.

{¶19}   Notably, Walmart did not dispute that, if it had received the prescription on Friday afternoon, it had a legal duty to Mr. Perez-Herrera when he arrived at the pharmacy to pick up his prescription on Saturday.  This was the primary aspect of the negligence claim that Walmart opposed on summary judgment.  Walmart pointed to evidence that it had no prior relationship with Mr. Perez-Herrera as a pharmacy customer and that it did not receive the Augmentin prescription from the clinic until after he left the store.  It pointed to the deposition testimony of Mr. Perez-Herrera about what he was told at the pharmacy on Saturday morning and evidence that Walmart received a voicemail about the prescription after he left the store.  Walmart asserted that, because it did not receive the prescription until after Mr. Perez-Herrera left the pharmacy, it owed no duty to him.

{¶20}   Mr. Perez-Herrera opposed this aspect of the summary judgment motion, however, by presenting deposition testimony that the clinic might have phoned in the prescription on Friday afternoon.  According to the physician's assistant who treated Mr. Perez-Herrera, he directed a nurse at the clinic on Friday afternoon to call in the Augmentin prescription.  The nurse testified in her deposition that the clinic treats many employees from Ohio Farms who are immigrants and do not speak English well.  When calling in a prescription for one of Ohio Farm's Spanish-speaking employees, it is her practice to call Ohio Farms to determine what pharmacy to use, if it is not on the patient's chart (which it was not in this case), and to inform a contact person there who speaks English and Spanish about the prescription.  Mr. Perez-Herrera testified that he was informed on Friday by the Ohio Farms contact person that a prescription would be ready at Walmart on Saturday.  Because he had been informed on Friday about the prescription, the nurse agreed in her deposition testimony that she must have called Ohio Farms to inform the contact person about his prescription.  At the time of her deposition testimony, the nurse had no memory

or documentation about whether she had also called in the prescription to Walmart on Friday afternoon, but she testified that it was her regular practice to call in the prescription to the pharmacy right before or after she called Ohio Farms.

{¶21} Although this evidence may be arguably weaker than evidence that Walmart received the prescription on Saturday, the weight or credibility of the evidence cannot be evaluated on summary judgment but must be resolved in favor of the nonmoving party. *Perez v. Scripps–Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988). "When factual ambiguities exist, inferences must still be resolved in favor of the nonmoving party." *Smathers v. Glass*, Slip Opinion 2022-Ohio-4595, ¶ 32. Because Mr. Perez-Herrera presented evidence that the prescription may have been called into Walmart on Friday, he demonstrated that there is a genuine issue of material fact about whether Walmart received the prescription before he arrived to pick it up on Saturday, December 23, 2017. Therefore, the trial court erred in granting summary judgment based on its factual finding that Walmart did not receive the prescription until after Mr. Perez-Herrera left the pharmacy.

Receipt of the Prescription on Saturday

{¶22} Mr. Perez-Herrera further asserted that, even if Walmart did not receive his prescription until after he left the pharmacy on Saturday, it owed a duty to him when he came to the pharmacy as a customer. Walmart's summary judgment motion, however, did not point to any evidence to challenge this aspect of the negligence claim.

{¶23} Instead, Walmart's summary judgment motion and the decision of the trial court framed the "duty" issue as follows: whether, after it determined that it had no record in its computer database of a prescription for a man named Paul Lujan, Walmart owed Mr. Perez-Herrera a duty to investigate further including asking him to provide his contact information. Framing the duty

issue in this manner, however, blurred the significant distinction between the *existence* of a duty and the *extent* of the duty that Walmart owed to Mr. Perez-Herrera.

**{¶24}** The Ohio Supreme Court has explained the significant distinction between these two concepts. *Berdyck v. Shinde*, 66 Ohio St.3d 573, 578 (1993), citing Prosser & Keeton on Torts (5 Ed.1984) 356, Section 53. "The existence of a duty in a negligence action is a question of law for the court to determine." *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). A duty is "an obligation imposed by law on one person to act for the benefit of another person due to the relationship between them." *Berdyck* at 578.

**{¶25}** On the other hand, "[w]hat a defendant must do, or must not do, is a question of the *standard of conduct* reasonably required to satisfy the defendant's duty." (Emphasis in original.) *Id.* Although the existence of a duty is a question of law to be determined by the court, the standard of conduct (or extent/scope of the duty) is generally determined based on the facts and circumstances of a given case. *See Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, ¶ 27.

**{¶26}** Even if Walmart did not receive the prescription until after Mr. Perez-Herrera left the pharmacy on Saturday, the legal "duty" question did not hinge on those underlying facts and circumstances. The legal question of whether Walmart owed a duty to Mr. Perez-Herrera should have focused on whether Walmart, as a dispensing pharmacy, owed any duty to Mr. Perez-Herrera, a customer who came to the pharmacy to pick up a medication that he believed would be waiting for him.

**{¶27}** The existence of an actor's duty to another person usually arises from the foreseeability of injury to someone in that person's situation. *Cromer* at ¶ 25. "[T]here are also certain legally recognized relationships between parties that can establish the existence of an

actor's duty to another person." *Id*. The relationship between a pharmacy and its customers is one of those relationships.

**{¶28}** Even if Walmart did not receive Mr. Perez-Herrera's prescription before he came to the pharmacy, it did have a legally recognized relationship with him. Mr. Perez-Herrera was a customer of the pharmacy. Although the trial court referred to him as a "potential" customer, suggesting that he had no reason to come to the pharmacy counter, he came to Walmart's pharmacy because he believed that a medication would be waiting there for him. It is established in Ohio law that pharmacists owe a duty to their customers.

**{¶29}** In fact, Walmart did not dispute that it owed some duty to Mr. Perez-Herrera, at least to respond to his request for his medication and to search the computer database to determine whether a medication had been prescribed for him. Moreover, in its brief supporting its motion for summary judgment, Walmart essentially conceded that it owed some duty to Mr. Perez-Herrera as a customer who attempted to pick up a prescription medication at its pharmacy. Quoting *Moore v. Covenant Care Ohio, Inc.*, 6th Dist. Lucas No. L-13-1259, 2014-Ohio-4113, ¶ 46, which relied on *Taugher v. Ling*, 127 Ohio St. 142 (1933), paragraph two of the syllabus, Walmart recognized that dispensing pharmacists "'have a duty to reasonably perform their services and their duty is owed to the public in general because of the inherent danger in their services.'" Consequently, the legal question of whether Walmart owed a duty to Mr. Perez-Herrera as a customer at its pharmacy was not actually in dispute. The trial court, therefore, erred by concluding that Walmart owed no legal duty to Mr. Perez-Herrera and granting summary judgment to Walmart on that basis.

**{¶30}** The extent of its duty, or standard of care, that Walmart owed to Mr. Perez-Herrera, however, is another question, which requires consideration of the facts and circumstances of this case. *See Cromer*, 2015-Ohio-229, at ¶ 27. Mr. Perez-Herrera alleged that, even if Walmart did

not receive the prescription until after he left the pharmacy Saturday, it should have investigated the matter further and asked him for his contact information.

**{¶31}** Through its summary judgment motion, however, Walmart did not directly challenge the extent of its duty if it did not receive the prescription until after Mr. Perez-Herrera left the store on Saturday. Because Walmart relied solely on case law from other jurisdictions involving distinguishable facts, it did not meet its initial *Dresher* burden on the extent of its duty. It relied on mere "conclusory assertion[s]" and did not "specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d at 293. Walmart did not submit any expert testimony about the extent of Walmart's duty, nor did it point to any other evidence in the record about the extent of its duty if it did not receive the prescription until after Mr. Perez-Herrera left the pharmacy. "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id*.

**{¶32}** Mr. Perez-Herrera supported his summary judgment opposition about the extent of Walmart's duty with the testimony of a pharmacy expert, Walmart's internal rules and policies, and the training and routine practices of Walmart's employees about how to handle a customer when it has no record of their prescription and they are not fluent in English. Because he had no burden on summary judgment to do so, however, we need not detail that evidence. Because Walmart failed to meet its initial *Dresher* burden, summary judgment as to the extent of Walmart's duty also should have been denied. Mr. Perez-Herrera's assignment of error is sustained.

III.

**{¶33}** Mr. Perez-Herrera's assignment of error is sustained. The judgment of the Wayne County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.

> Judgment reversed and
> the cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
SUTTON, J.
CONCUR.

APPEARANCES:

KATHLEEN S. ST. JOHN and JONATHAN D. MESTER, Attorneys at Law, for Appellant.

KEVIN C. SCHIFERL and STEPHANIE V. MCGOWAN, Attorneys at Law, for Appellees.

MATTHEW C. BLICKENSDERFER, Attorney at Law, for Appellees.