[Cite as *Ruckman v. Smith*, 2022-Ohio-1813.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| JAMES L. RUCKMAN, et al., | **CASE NO. 2021-T-0036** |
| Plaintiffs-Appellees, | |
| - v - | Civil Appeal from the Court of Common Pleas |
| RANDY L. SMITH, et al., | |
| Defendants-Appellants. | Trial Court No. 2019 CV 01089 |

**O P I N I O N**

Decided: May 31, 2022
Judgment: Reversed; remanded

*Michael D. Harlan,* Gervelis & Harlan, LLC, 3790 Boardman Canfield Road, Canfield, OH 44406 (For Plaintiffs-Appellees).

*John T. Mclandrich* and *Frank H. Scialdone,* Mazanec, Raskin & Ryder Co., LPA, 100 Franklin's Row, 34305 Solon Road, Cleveland, OH 44139 (For Defendant-Appellants).

JOHN J. EKLUND, J.

{¶1} Appellants are the three Trumbull County Commissioners, Frank Fuda, Daniel Polivka, and Mauro Cantalamessa in their capacity as the Trumbull County Board of Commissioners, Randy Smith in his capacity the Trumbull County Engineer, and individual defendants Gregg Alberini (former highway superintendent) and Tom Klejka (former assistant highway superintendent). Appellants appeal following the Trumbull County Court of Common Pleas' denial of summary judgment with respect to a complaint filed by James and Jennifer Ruckman.

**{¶2}** Appellants raise one assignment of error arguing that the trial court erred by denying summary judgment when they are entitled to the benefit of political-subdivision immunity pursuant to R.C. Chapter 2744.

**{¶3}** After review of the record and applicable caselaw, we find appellants' assignment of error to have merit. The trial court erred in denying appellants' cross-motion for summary judgment and finding that appellants were not entitled to political subdivision liability immunity. The court erred in finding that the roadway was not in repair at the time of the accident and erred in finding that the placement of an incorrect discretionary warning sign stripped appellants' immunity. The judgment of the Trumbull County Court of Common Pleas is reversed, and the matter is remanded for further proceedings consistent with this opinion.

### Substantive and Procedural History

**{¶4}** Both parties agree that the basic facts of this matter are undisputed. On October 10, 2015, James Ruckman was involved in a single-vehicle motorcycle accident. The prior day, the Trumbull County Engineers were using a milling machine on East Market Street in Howland Township. The use of this machine left a strip of uneven pavement between 1.5 inches and 0.5 inches deep, 160 feet long, and two feet, three inches wide between the westbound lanes of travel. The worksite was left in this condition at the end of the workday and throughout the weekend. Appellants placed a sign to warn of uneven lanes, however, the sign placed was actually a sign intended to be used for significant shoulder drop-offs.

**{¶5}** While Ruckman traveled on the road, he attempted to change lanes, his tire entered the milled portion of the street, and he was ejected from his motorcycle causing

2

severe injury. Appellees filed a lawsuit claiming that the sign used to warn of the danger was the incorrect sign, which was an incorrect color, placed at an incorrect height, and in an incorrect location 1096 feet before the road hazard began. However, all parties agree that that Ohio Manual of Uniform Traffic Control Devices (OMUTCD) provides that the placement of a sign in this situation is permissive and not mandatory. Appellees argued that once Trumbull County placed a sign, the implementation of that decision is not immune from liability and must conform to the mandates of the OMUTCD.

{¶6} Appellees claim that the presence of the milling in the road created a dangerous condition, and that the road was not in a state of repair. They rely on James Valenta, P.E., who testified as a highway safety expert on behalf of appellees at deposition and who provided an affidavit in support of appellees' motion for partial summary judgment. In his affidavit he stated that Trumbull County allowed a hazardous and unsafe roadway to exist. Valenta testified in his deposition that the 1.5 inch differential in the pavement was an unreasonably dangerous condition for a motorcycle but not for an automobile or a truck. However, he said that with the proper road signs, the road would have been reasonably safe, notwithstanding the presence of the trench, "[b]ecause Ruckman would have been warned about the presence of the trench by the use of the appropriate signs."

**Assignment of Error and Analysis**

{¶7} Appellant's raise one assignment of error which states:

{¶8} "THE LOWER COURT DENIED DEFENDANTS/APPELLLANTS THE BENEFIT OF IMMUNITY UNDER OHIO REVISED CODE CHAPTER 2744."

3

Case No. 2021-T-0036

{¶9} Generally, the denial of summary judgment is not a final, appealable order. *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 9. However, the Supreme Court of Ohio has held that "[w]hen a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Id.* at syllabus. Appellate review under R.C. 2744.02(C) is limited to the review of alleged errors that involve the denial of the benefit of an alleged immunity from liability. *Doe 1 v. Licate*, 11th Dist. Ashtabula Nos. 2018-A-0019 and 2018-A-0020, 2019-Ohio-412, ¶ 28.

{¶10} The review of a summary judgment denying political-subdivision immunity is de novo and is governed by Civ.R. 56. *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 13. "We review the trial court's decision independently and without deference, pursuant to the standards in Civ.R. 56(C)." *Allen v. 5125 Peno, LLC*, 11th Dist. Trumbull No. 2016-T-0120, 2017-Ohio-8941, 101 N.E.3d 484, ¶ 6, citing *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶11} Summary judgment is appropriate when (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion and it is adverse to the nonmoving party. *Holliman v. Allstate Ins. Co.*, 86 Ohio St.3d 414, 415, 715 N.E.2d 532 (1999). "The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists and the moving party is entitled to judgment as a matter of

4

Case No. 2021-T-0036

law." *Dresher v. Burt*, 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264 (1996). If the movant meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial. *Id.*

**Political Subdivision Immunity:**

{¶12} The Political Subdivision Tort Liability Act is codified at R.C. Chapter 2744. R.C. Chapter 2744 establishes a three-tier analysis to determine whether a political subdivision is immune from liability. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556, 733 N.E.2d 1141 (2000).

{¶13} The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or a proprietary function. *Pelletier, supra,* at ¶ 15. However, that immunity is not absolute. *Id.* The second tier of the analysis requires a court to determine whether any of the exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. *Id.* If any of the exceptions to immunity in R.C. 2744.02(B) apply, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability. *Id.*

{¶14} In this case, the parties do not dispute that the county is a political subdivision and that it was engaged in a governmental function. Thus, our focus is on the second and third tiers of the analysis.

**"In Repair" Exception:**

{¶15} Our first inquiry is whether an exception to immunity applies. This case implicates R.C. 2744.02(B)(3), which provides, in relevant part, that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure

5

to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *." The trial court found that there was a question of fact as to whether the "state of the road constitutes 'in repair' as defined in the statute." However, we find that appellees have not created a question of fact that overcomes appellants' presumption of immunity under R.C. Chapter 2744. Appellees failed to meet this burden to show an exception to immunity applies because appellees failed to establish that the road was not "in repair."

{¶16} The statute does not define the phrase "in repair." The Supreme Court of Ohio has construed the word "repair" in this context to mean "'the state of being in good or sound condition.'" *Pelletier* at ¶ 19, quoting Webster's Third New International Dictionary 1923 (2002). In construing a statute imposing a duty on county commissioners to keep roads and bridges "'in proper repair,'" the court explained that "this language created 'a duty on the commissioners only in matters concerning either the deterioration or disassembly of county roads and bridges.'" *Id.*, quoting *Heckert v. Patrick*, 15 Ohio St.3d 402, 406, 473 N.E.2d 1204 (1984). In the context of roadway conditions, courts have consistently construed "in repair" to include maintaining a road's condition, such as fixing holes. *See Cerri v. Clemson Excavating*, Inc., 11th Dist. Geauga No. 2018-G-0162, 2019-Ohio-1161, ¶ 20 (collecting cases).

{¶17} The threshold question before us is not whether the road was "safe" or "unsafe." Instead, it is a question of whether the road was "in repair" – that is to say, in good or sound condition. *See Pelletier,* supra, at ¶ 19. A road can be unsafe and may or may not be in "in repair." Conversely, a safe road may or may not be "in repair." While

6

appellees have focused their arguments on whether the road was unreasonably unsafe, we focus our analysis on the terms of the statute – "in repair."

{¶18} "It has long been settled in Ohio that a municipal corporation is not an insurer of the safety of its streets." *Deckant v. City of Cleveland*, 155 Ohio St. 498, 502, 99 N.E.2d 609 (1951). In 2003, the Legislature amended R.C. 2744.02(B)(3). The prior version of the statute provided that political subdivisions were liable for injury, death, or loss caused by their failure to keep public roads "free from nuisance." The 2003 amendment removed the "nuisance" language and replaced it with language stating that political subdivisions are liable for their "failure to remove obstructions from public roads." *See Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 25.

{¶19} In *Howard*, the Ohio Supreme Court said that the amendment was significant and a "deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." *Id.* at ¶ 25-26. The court said that prior to the amendment, the term "nuisance" included "'conditions that directly jeopardize the safety of traffic on the highway' even if they did not appear on the roadway itself." *Id.* at ¶ 27. The court concluded that removing liability for "nuisance" and replacing it with "obstruction" under the statute narrowed the scope of the exception. *Id.* While a nuisance described a condition jeopardizing the safety of traffic on the highway, an obstruction "must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so." *Id.* at ¶ 30.

{¶20} The General Assembly as the "arbiter of public policy in Ohio, has acted 'to limit political-subdivision liability for roadway injuries and deaths[.]'" *Pelletier, supra*, at ¶

7

31, quoting *Howard* at ¶ 29. The purpose of the change in policy was to limit fiscal liability "by limiting a political subdivision's liability for regulating maintaining, and repairing public roads to the negligent failure to keep them in repair and to remove obstructions from them." *Id.* If the road was in repair, the political subdivision is immune from liability and summary judgment in favor of appellants is appropriate. If the road was not in repair, then the political subdivision is not immune, and a jury should decide whether the political subdivision was negligent and whether its action or inaction was the proximate cause of the plaintiff's injury.

{¶21} The Dissent states that appellees have plead more than one proximate cause of Ruckman's injury: the first being the creation of the trench and the second being the failure to post the correct traffic control device. However, appellees, through Valenta's testimony, provide evidence of only one proximate cause of the accident – namely that the roadway was hazardous and unsafe, notwithstanding the existence of the trench, because appellants did not use appropriate warning signs. The resolution of this matter turns on appellants' duty and immunity and appellees failed to carry the burden of overcoming appellants' immunity under R.C. 2744.02.

{¶22} In *Lakota v. Ashtabula*, 11th Dist. Ashtabula No. 2015-A-0010, 2015-Ohio-3413, this court determined that a city was not entitled to immunity for an accident that occurred in an area of construction to repair a sinkhole on a public road. *Id*. at ¶ 1, ¶ 8. In that case, a motorcyclist encountered a portion of a public road that had been excavated and backfilled with gravel. *Id*. at ¶ 2. As the rider approached the excavated area, his motorcycle went into a depression in the excavated area, which resulted in him being ejected and sustaining injuries. *Id.*

8

Case No. 2021-T-0036

{¶23} We held that the "in repair" exception "can apply when the city negligently fails to keep the road in repair during ongoing construction." *Id.* at ¶ 33. Although the city "was in the process of repairing the sinkhole and excavated area, it had not completed the repair. The non-permanent repair had not yet fully remedied the damaged area and, before it was paved over, created a new problem for motorists * * *." *Id.* at ¶ 30. We stated that "[a] repair that causes an additional danger to drivers cannot create a road that is 'in repair.'" *Id.*

{¶24} In *Volny v. Portage County*, 11th Dist. Portage No. 2021-P-0085, 2022-Ohio-338, 184 N.E. 3d 925, we recently decided this very issue where the existence of a hole within the asphalt near to an active construction site suggested the existence of deterioration and that the road was not "in repair." *Id.* at ¶ 38. The county argued that the road was under necessary construction and therefore "in repair" under the meaning of the statute. *Id.* at ¶ 39. We held "that the construction project on Parkman Road was incomplete at the time of * * * [the] accident does not preclude application of the 'in repair' exception." *Id.* at ¶ 42.

{¶25} In *Volny*, the county had created an asphalt-filled trench which "was a temporary condition awaiting final repair, i.e., paving." *Id.* at ¶ 46. The road surface had several potholes in the repair area as well as asphalt debris and sand. *Id.* at ¶ 15. No citation was issued to Volny due to the poor road conditions. In both *Volny* and *Lakota*, we determined that the evidence presented a factual issue which supports a finding that the road was not "in repair" at the time of the accidents *Id.* at ¶ 15, ¶ 53 (evidence showed that the road surface had several pot holes, asphalt debris, sand, and repairs were being

9

made on it); *Lakota, supra,* at ¶ 33 (a six to eight inch depression in the gravel with gravel strewn about the area created a genuine issue of material fact).

{¶26} Appellants argue that the road was in repair. For this they rely on Valenta, appellees' expert, who admitted that the mere presence of the milled pavement did not make the road unreasonably dangerous. Appellants argue that Valenta's deposition testimony described the lack of appropriate signage as what made the road unreasonably dangerous. However, appellants' argument misses the critical point. Whether the road was unreasonably unsafe is not directly related to whether the road is in repair. We review the immunity exception under R.C. 2744.02(B)(3) on the only objective measure provided by the legislature – whether the road was "in repair." The question of whether the road was unreasonably unsafe is not the question before this court and we must not lose sight of the statutory framework.

{¶27} In this case, the nature of the hazard was at most a 1.5 inch deep milled pavement trench rather than a six to eight inch deep depression with loose gravel or a large pothole as in *Volny* or *Lakota.* Appellees have provided evidence by way of affidavit and deposition testimony that, construed in a light most favorable to them, would suggest that the road was unsafe for motorcyclists. However, the threshold question is not a question of safety. Instead, it is a question of whether the road was "in repair." Appellees failed to present evidence that the road was not in good or sound condition and instead provided evidence suggesting that the road was unsafe for motorcycle travel.

{¶28} In essence, appellees have asked this court to equate an unsafe road with a road that is not "in repair." This we cannot do. Although, Valenta said that the road was unsafe for motorcycle travel, his testimony about this statement was qualified and did not

10

Case No. 2021-T-0036

state that the road itself was not in good or sound condition. We are mindful that the General Assembly has provided exceptions to immunity for roads that are not "in repair" and obstructions to public roads while excluding an exception to immunity for nuisance conditions. If the Legislature intended for exceptions to immunity to include a road that is hazard free, without blemish, reasonably safe, or some other similar term, it would have spoken. In short, unreasonably unsafe, or other similar concepts are not the basis for an exception to immunity.

{¶29} Valenta's affidavit states that "On October 10, 2015 Trumbull County negligently allowed a hazardous and unsafe roadway to exist along westbound East Market Street between Shaffer Driver and Clifton." The affidavit said that "Trumbull County was in the process of repairing the roadway surface with a milling machine. The repair work consisted of a single course mill and resurface on East Market Street where the pavement surface had deteriorated to a condition warranting repair."

{¶30} Although Valenta's affidavit stated that the road had been milled, leaving a trench, his affidavit and deposition testimony did not assert facts indicating that this condition resulted in the road not being in good or sound condition. Instead, his affidavit explained that appellants "did not follow the Ohio Manual on Uniform Traffic Control Devices with regard to establishing temporary traffic control zones on roadways open for public travel."

{¶31} It is telling that Valenta, as appellees' own expert witness, stated in his deposition that with appropriate warning signs, the road at issue here would not constitute an unreasonably unsafe roadway for Ruckman's vehicle. Although, Valenta made clear that the 1.5 inch differential in the pavement constituted an unreasonably dangerous

11

driving condition for a motorcycle, his deposition testimony indicated that the road was only unreasonably unsafe insofar as the appellants did not erect the appropriate traffic control devices in the construction area.

{¶32} A road with a sharp curve may be "in repair" for purposes of R.C. 2744.02(B)(3). Nevertheless, without an appropriate warning sign of the curve ahead, the road may be unsafe. Similarly, a road may be "in repair" while being rendered unsafe due to weather conditions such as rain, snow, or wind. The situation is the same here. While appellees have provided evidence that the road was undergoing construction, they have not demonstrated that the road was not "in repair." To be in good or sound condition does not mean to be in pristine condition, without variation or blemish, or reasonably safe. While the road was certainly not in such a pristine state, appellees have failed to put forth evidence that the cause of the road being unsafe was anything other than the lack of appropriate signs.

{¶33} Valenta did not testify that the road itself was not "in repair." Instead, he testified the road was unreasonably unsafe because it lacked appropriate warning signs. He said that road was unreasonably unsafe for travel for motorcyclists but that, notwithstanding the 1.5 inch deep trench, the appropriate signs would have made the road safe for Ruckman. This claim sounds in nuisance, which is no longer an exception to immunity under R.C. 2744.02(B)(3). To claim that a road is unsafe for motorcyclists is not the same as providing evidence that the road was not in good or sound condition. A road may be dangerous for a motorcycle while still being in good or sound condition. Appellees did not articulate anywhere that the road was not "in repair."

12

**{¶34}** It must be observed that the use of the correct traffic control device would not affect whether the road was "in repair." Whether the road was "in repair" would be true with or without the correct warning signs. The General Assembly's amendment of R.C. 2744.02(B)(3) to remove the requirement that political subdivisions keep a road free from nuisance is instructive to this conclusion because the Legislature's intent was to limit liability for political subdivisions to situations where the road was not "in repair" but not situations where a nuisance condition might otherwise render the road unsafe. Valenta did not opine a basis for finding that the road was not "in repair," therefore, appellees failed to meet their burden to show that the "in repair" immunity exception applies in this case.

**{¶35}** To rule otherwise on this evidence would result in a de facto standard that a roadway under construction is not "in repair." We do not seek to establish such a standard. Further, we do not seek to suggest that a road being described as unsafe equates to the road not being in repair. Instead, we find that appellees have failed to meet their burden of demonstrating that an exception to immunity exists.

**{¶36}** Appellees pled a case and provided evidence that tended to show that the road was unsafe when their burden was to demonstrate that the road was not in good or sound condition. Our holding today is also consistent with *Lakota* and *Volny* where the record did establish a genuine issue of material fact as to whether the road was "in repair." Here, no genuine issue of material fact exists because the road would have been safe, notwithstanding the presence of the trench, had appropriate signs been present. A sign cannot alter whether a road is "in repair."

13

Case No. 2021-T-0036

**{¶37}** Further, the state of the road was distinguishable from our precedent in *Lakota* and *Volny* where in both cases witnesses described the road hazards as under construction, filled with debris, and containing large holes. In this case, the road was cleanly milled and did not have large holes or other debris in the surrounding area. Therefore, we find that appellees did not establish the "in repair" immunity exception under R.C. 2744.02(B)(3).

**Discretionary Traffic Control Devices:**

**{¶38}** As noted above, all parties agree that the placement of warning signs in the case was discretionary under the OMUTCD. R.C. 2744.01(H) provides that the definition of public roads "does not include berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio Manual of Uniform Traffic Control Devices."

**{¶39}** In issuing its denial of summary judgment, the trial court relied upon *Franks v. Lopez,* 69 Ohio St.3d 345, 632 N.E.2d 502 (1994) and *Fowler v. Williams Cty. Commrs.,* 113 Ohio App.3d 760, 682 N.E.2d 20 (6th Dist.1996) for the proposition that "once the decision to install" certain traffic control devices "has been made, the implementation of that decision is not immune from liability." *Franks* at 349. *Franks* did not address political subdivision immunity for a failure to keep a road in repair under R.C. 2744.02(B)(3). *Franks* was based upon the prior version of R.C. 2744.02(B)(3) discussed above providing that political subdivisions were liable for injury, death, or loss caused by their failure to keep public roads "free from nuisance." In *Fowler v. Williams Cty. Commrs.,* 113 Ohio App.3d 760, 682 N.E.2d 20 (6th Dist.1996), the Sixth District relied on *Franks* in a statutory immunity case involving a construction trench in the road. In that case, the

14

construction crew placed a road closed sign on a barricade, however, the crew failed to place mandated detour signs under the OMUTCD as required when a road is closed for construction. *Id.* at 765-766. Fowler struck a backhoe parked in the road with his motorcycle and died.

{¶40} The court reviewed the prior version of R.C. 2744.02(B)(3) to determine whether the "lack of specified warning signs at or in advance of the construction zone is an exception within the meaning of R.C. 2744.02(B)(3) (a nuisance) and R.C. 2744.02(B)(5) (express imposition of liability by a statute) thereby abrogating the immunity afforded to appellees." *Id.* at 769. The court said that the "cause of action must rest on the statutory ground that the installation of and the lack of mandatory warning devices at this particular construction area are an exception to the grant of immunity, *i.e.*, they constitute a nuisance." *Id.* Under this framework, the failure to adhere to "the mandates of the OMUTCD create a question of fact on the issue of whether these devices or lack thereof created a nuisance that was the proximate cause of William Fowler's injury and death." *Id.* at 773.

{¶41} The court also addressed whether the existence of the trench and the placement of the backhoe in the road constituted a nuisance. *Id.* at 774. The court said that the placement of the backhoe created a question of fact as to nuisance while there was no question of fact regarding the trench because "the determination to engage in such a project involves a discretionary function on the part of the county engineer. *See* R.C. 5543.17." *Id.*

{¶42} In *Darby v. Cincinnati*, 1st Dist. Hamilton No. C-130430, 2014-Ohio-2426, the First District addressed the 2003 amended version of R.C. 2744.02(B)(3) to determine

15

whether the placement of a stop sign constituted an "failure to remove an obstruction" from the road. The court said that because the "placement of the stop sign is discretionary under the OMUTCD, it is not included in the definition of a 'public road' as defined in R.C. 2744.01(H). Therefore, the exception to immunity set forth in R.C. 2744.02(B)(3) does not apply." *Id.* at ¶ 20.

{¶43} The trial court in this case relied upon *Franks* and *Fowler* which are outdated caselaw construing now deleted statutory "nuisance" language from R.C. 2744.02(B)(3). Further, *Fowler* dealt with the mandatory placement of road signs under the OMUTCD while it is undisputed that the case before us involves the use and placement of discretionary road signs.

{¶44} In relying on these cases, the court erred in concluding that the appellants' decision to place a discretionary traffic control device required the placement of those signs to be in compliance with the OMUTCD and therefore stripped appellants' immunity. This decision is not supported by the 2003 amendment of R.C. 2744.02(B)(3) or 2744.01(H), by *Howard*, or by *Darby.*

{¶45} In short, we are aware of no controlling authority from an Ohio court holding that placing or failing to place a discretionary sign under the OMUTCD renders a roadway not "in repair." Further, a discretionary sign is not statutorily part of the roadway under R.C. 2744.01(H) and cannot constitute a "failure to remove obstructions from public roads."

{¶46} The incorrect placement of a discretionary sign under the OMUTCD cannot be the basis for an exception to immunity under R.C. 2744.02(B)(3) as the Legislature's amendment intended to reduce the possibility of governmental liability upon roadways.

16

Although appellees' expert indicated that he believed the absence of the correct signage caused the road to be unreasonably unsafe for motorists, the use of an incorrect discretionary sign does not constitute an exception to immunity set forth in R.C. 2744.03(B)(3). Valenta's deposition testimony made clear that in his expert opinion, the road was unreasonably unsafe only insofar as appellants did not properly place a discretionary road sign.

{¶47} As discussed above, appellees articulated a claim that the signage, coupled with state of the road at the time of the accident, created a nuisance. Valenta stated that the lack of the appropriate signs led to the road being unreasonably unsafe. However, the Legislature has acted to preclude a nuisance from stripping a political subdivision of immunity under R.C. 2744.02(B)(3). To successfully remove appellants' immunity in this case, appellees must demonstrate that appellants failed to remove obstructions from public roads or left them in disrepair. Because the placement of a discretionary road sign is not part of the roadway under R.C. 2744.01(H), the exception to immunity is not triggered by the incorrect use of a discretionary traffic control device.

{¶48} As no exception to immunity applies under the second tier of the governing analysis, we find that the trial court erred in its denial of appellants' cross-motion for summary judgment.

{¶49} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is reversed, and this matter is remanded for further proceedings

17

consistent with this opinion.

MATT LYNCH, J., concurs,

MARY JANE TRAPP, J., concurs in part and dissents in part with Concurring/Dissenting Opinion.

————————————

MARY JANE TRAPP, J., concurs in part and dissents in part with Concurring/Dissenting Opinion.

{¶50} While I concur with the majority's opinion that the trial court erred in its determination that the placement of an incorrect discretionary warning sign stripped the county of its immunity, I dissent as to the majority's determination that no genuine issue of material fact remained for jury determination regarding the "in repair" exception to immunity under R.C. 2744.02(B)(3) due to the presence of a milled trench that was alleged to be *a* proximate cause of the motorcycle accident. There may be more than one contributing cause to an accident. In this case we have two: a milled trench that was left unfilled after work ended for the day and a failure to install a proper and discretionary warning sign that would have alerted motorcyclists to an upcoming hazard. The county is immune from liability for the latter, but not the former.

18

{¶51} The evidence considered by the trial court in the summary judgment exercise showed that the day before the accident, a county engineering crew was performing a so-called "mill and fill" to repair potholes in the roadway. A milling machine affixed to a Bobcat grinded out the deteriorated portion of the asphalt. The resultant trench was to be filled with new asphalt, and the area rolled to compact that asphalt. There is no question that the crew left the job site without filling the open trench that Mr. Ruckman encountered.

{¶52} As noted by the majority, this court recently addressed the "in repair" exception in *Volny v. Portage Cty.*, 2022-Ohio-338, 184 N.E.3d 925 (11th Dist.). In *Volny*, we observed that "[t]he statute does not define the phrase 'in repair.' The Supreme Court of Ohio has construed the word 'repair' in this context to mean '"the state of being in good or sound condition."' *Pelletier*[ *v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210,] ¶ 19, quoting *Webster's Third New International Dictionary* 1923 (2002). In construing a statute imposing a duty on county commissioners to keep roads and bridges '"in proper repair,"' the court explained that 'this language created "a duty on the commissioners only in matters concerning either the deterioration or disassembly of county roads and bridges."' *Id.*, quoting *Heckert v. Patrick*, 15 Ohio St.3d 402, 406, 473 N.E.2d 1204 (1984). In the context of roadway conditions, courts have consistently construed 'in repair' to include maintaining a road's condition, such as fixing holes. *See Cerri v. Clemson Excavating, Inc.*, 11th Dist. Geauga No. 2018-G-0162, 2019-Ohio-1161, ¶ 20 (collecting cases)." *Volny* at ¶ 37.

19

**{¶53}** Here, as in *Volny*, the county argued that the roadway was in repair because it was performing the "mill and fill" work to "remove the deterioration (i.e., potholes or other deterioration) and maintain the roadway 'in repair.'"

**{¶54}** Here, as in *Volny*, the road project was incomplete at the time of the accident. Mr. Volny's motorcycle wheel hit a pothole in the area of the roadway where the repairs were unfinished. Mr. Ruckman's motorcycle wheel hit a trench created by the milling machine that had yet to be filled.

**{¶55}** Here, as in *Volny*, the fact that the road project was incomplete at the time of the accident does not preclude application of the "in repair" exception.

**{¶56}** The majority also cites this court's decision in *Lakota v. Ashtabula*, 11th Dist. Ashtabula No. 2015-A-0010, 2015-Ohio-3413, *appeal not accepted*, 144 Ohio St.3d 1478, 2016-Ohio-467, 45 N.E.3d 245. In *Lakota*, we determined that a city was not entitled to immunity for an accident that occurred in an area of construction to repair a sinkhole on a public road. We held that the "in repair" exception "can apply when the city negligently fails to keep the road in repair during ongoing construction." *Id.* at ¶ 33. Although the city "was in the process of repairing the sinkhole and excavated area, it had not completed the repair. The non-permanent repair had not yet fully remedied the damaged area and, before it was paved over, created a new problem for motorists * * *." *Id.* at ¶ 30. We stated that "[a] repair that causes an additional danger to drivers cannot create a road that is 'in repair.'" *Id.*

**{¶57}** Despite acknowledging these germane cases, the majority attempts to distinguish this case from our precedent and inexplicably determines that the road was in repair based on two factors: one, the size of the roadway depression created by the

20

roadwork that was a proximate cause of Mr. Ruckman's accident was, at the most, 1.5 inches deep, as compared to larger holes in *Volny* and *Lakota*; and two, despite evidence by way of Mr. Ruckman's expert witness' opinion that the 1.5-inch deep trench was an unreasonably dangerous condition for a motorcycle, the pivotal evidence was that expert's other opinion relating to a different or alternative contributing cause; that is, the failure to post the proper warning sign was hazardous and made the roadway unsafe.

{¶58} The two opinions in evidence are not mutually exclusive.

{¶59} "Civ.R. 8(E)(2) permits alternative or hypothetical pleading, or even the use of inconsistent claims, and states, in part, '(w)hen two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements.'" *Iacono v. Anderson Concrete Corp.*, 42 Ohio St.2d 88, 92, 326 N.E.2d 267 (1975). "A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds." Civ.R. 8(E)(2).

{¶60} Proximate cause is "an act or failure to act that in the natural and continuous sequence directly produced the injury and without which the injury would not have occurred." *Ohio Jury Instructions*, CV Section 405.01 (Rev. Feb. 11, 2017) ("*OJI*"); *see Strother v. Hutchinson*, 67 Ohio St.2d 282, 287, 423 N.E.2d 467 (1981). Proximate causation has been described as "'some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered.'" *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St.3d 609, 618, 653 N.E.2d 661 (1995), quoting Keeton, Dobbs, Keeton & Owen, *Prosser and Keeton on the Law of Torts*, Section 41, 263 (5th Ed.1984).

21

{¶61} "There may be more than one proximate cause of the injury." *OJI*; *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 587, 575 N.E.2d 828 (1991). "The fact that some other cause combined with the negligence of a defendant in producing the injury does not relieve a defendant from liability so long as the plaintiff proves that the conduct of the defendant was a substantial factor in producing the harm." *OJI*; *see Strother* at 287.

{¶62} As noted, Mr. Ruckman asserted two negligent acts. The first was the creation of the trench that was left unfilled. The second was the failure to properly post the correct warning sign. Mr. Ruckman's expert provided opinions creating a question of fact regarding each negligent act and each as a proximate cause or contributing factor of the accident. Because the posting of the warning sign is a discretionary act, the county is immune from liability, but it may not escape liability for leaving the roadway in a state of disrepair.

{¶63} Despite acknowledging that the General Assembly chose not to define the phrase "in repair," the majority goes to great lengths to create a legally significant differentiation between a road that is "in repair" and a road that is "unsafe." The majority concludes that the evidence failed to establish a genuine issue of material fact because the appellee's expert used the phrases "safe" and "unsafe" rather than the statutory language of "in repair" in his opinion testimony.

{¶64} The focus of the expert's testimony was the safety issue created by the lack of appropriate signage. This testimony was used to support the primary theory that the failure to install the appropriate warning sign to alert those on the roadway to a defect in the roadway created by the political subdivision was a proximate cause of the accident.

22

**{¶65}** The majority observes that the expert provided "evidence of only one proximate cause of the accident - namely that the roadway was hazardous and unsafe, notwithstanding the existence of the trench, because the appellants did not use appropriate warning signs." From this observation the majority concludes that the appellees' expert failed to put forward evidence establishing the road was not in repair. He did not need to do so.

**{¶66}** The majority misapprehends the nature of the summary judgment exercise. Appellees did not need an expert to establish whether this record presented a genuine issue of material fact as to whether the road was in disrepair when there was undisputed evidence that the roadway had a manmade trench cut into the asphalt during an uncompleted road repair project.

**{¶67}** I agree that the "threshold question" in this case is whether the road was in repair, that is, in good or sound condition, but as in *Volny*, when a political subdivision begins to repair a deteriorated section of a roadway by milling a trench and leaves the repairs unfinished and there is evidence that a motorcyclist entered the trench and flipped his bike, it is up to a jury to determine whether this roadway was out of repair. No expert testimony was needed to create an issue of fact in *Volny*, nor was it needed in this case.

**{¶68}** The determination of proximate cause or the issue of causation is generally for the determination of the jury, and it is not for the court to substitute its reasoning for that of the jury in a field which belongs peculiarly to the latter. *Baldridge v. Wright Gas Co.*, 154 Ohio St. 452, 96 N.E.2d 300 (1951), paragraph three of the syllabus. Further, the determination of whether an actor's conduct was a substantial factor in producing the

23

plaintiff's injury is a question of fact to be determined by the trier of fact. *Queen City Terminals*, *supra*, at 618.

{¶69} Having found the "in repair" exception to immunity in R.C. 2744.02(B)(3) to be applicable, as in *Volny* and *Lakota*, I would find that the defenses to liability in R.C. 2744.03(A) do not apply. "Overhanging branches and foliage which obscure traffic signs, malfunctioning traffic signals, signs which have lost their capacity to reflect, *or even physical impediments such as potholes*, are easily discoverable, and *the elimination of such hazards involves no discretion, policy-making or engineering judgment.* The political subdivision has the responsibility to abate them and it will not be immune from liability for its failure to do so." (Emphasis added.) *Franks v. Lopez*, 69 Ohio St.3d 345, 349, 632 N.E.2d 502 (1994).

{¶70} For these reasons, I respectfully concur in part and dissent in part. I would reverse the judgment of the trial court, in part, and remand the matter for further proceedings.

24