[Cite as *Maras v. Girard*, 2025-Ohio-608.]

## IN THE COURT OF APPEALS OF OHIO
### ELEVENTH APPELLATE DISTRICT
### TRUMBULL COUNTY

| | |
|---|---|
| BRITTANY MARAS, | CASE NO. 2024-T-0065 |
| Plaintiff-Appellant, | |
| - vs - | Civil Appeal from the<br>Court of Common Pleas |
| CITY OF GIRARD, OHIO, | |
| Defendant-Appellee. | Trial Court No. 2023 CV 01153 |

**O P I N I O N**

Decided: February 24, 2025
Judgment: Affirmed

*Michael D. Rossi*, Guarnieri and Secrest, 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Plaintiff-Appellant).

*James A. Climer*, *Zachary W. Anderson*, *John D. Pinzone* and *Frank H. Scialdone*, Mazanec, Raskin & Ryder Co., LPA, 100 Franklin's Row, 34305 Solon Road, Cleveland, OH 44139 (For Defendant-Appellee).

MATT LYNCH, J.

{¶1} Plaintiff-appellant, Brittany Maras, appeals from the judgment of the Trumbull County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, the City of Girard. For the following reasons, we affirm the judgment of the lower court.

{¶2} On September 5, 2023, plaintiffs Maras and Kourtnie Lichty filed an Amended Complaint against Girard and CSX Transportation. It alleged that the plaintiffs' four-wheeler vehicle, or ATV, "collided with a passing CSX train as a direct and proximate result of City of Girard's negligent failure to keep its West Liberty Street in repair and free from obstructions and/or CSX's negligent business practices and operations," resulting in

serious injuries. The plaintiffs subsequently dismissed the complaint against CSX and Lichty later withdrew as a plaintiff.

{¶3} Girard filed an Answer on September 19, 2023, asserting, inter alia, that it was entitled to immunity as a political subdivision pursuant to R.C. Chapter 2744.

{¶4} On June 21, 2024, Girard filed a Motion for Summary Judgment. It argued that the "alleged roadway is the termination of a street entering onto private railroad tracks" and it was not required to maintain areas "that the traveling public has no right to drive upon." It argued that it was not required to keep roads in a state of repair for ATVs which are not permitted to travel on streets under the Girard Codified Ordinances. Maras argued in her opposition that the road was in an obvious state of disrepair, given the loose bricks. The following facts were asserted through deposition testimony and exhibits:

{¶5} On October 22, 2022, Kourtnie Lichty was driving an ATV with Brittany Maras as her passenger. Lichty had ridden ATVs for approximately eight years and did so about once or twice a week. While Lichty did not have a set route, she typically rode in the woods due to the fact that it was illegal to ride on public roads. During the October 22 ride, they traveled through several wooded areas and then drove down West Liberty Street in Girard. Lichty had ridden on this street many times and described it as a steep downhill brick road with a dead end. There was a barrier at the end of the road which she was able to drive around on the ATV. When Lichty drove around the barrier on October 22, she was driving around 4 m.p.h. and had to brake because of the incline of the road. After she began to turn the ATV around the barrier to drive beside the train tracks, the wheels of the ATV sunk into bricks and rocks and she was "pretty sure we kicked a brick into it," which then prevented her from turning the ATV. She described that the bricks at the end of the road were falling apart. She stated: "There was a big pile of rocks and

2

there were bricks.  So either we were sliding in the big pile of rocks . . . and then we slid into [a passing train] sideways – it clipped my front rack."  The two suffered injuries as a result of hitting the passing train.

{¶6}    Brittany Maras had frequently been a passenger of Lichty's and considers her to be a safe driver.  She indicated that the two had been drinking some alcoholic beverages before riding that day, although she was not concerned that Lichty was impaired.  She observed that at the end of West Liberty, there was a barrier covered in brush.  She agreed that the road had been a dead end for a long time.  Before hitting the train, Lichty had been applying the brakes but they were not effective.

{¶7}    James Dylan Maras, Lichty's boyfriend and Maras' brother, testified that he was familiar with the area where the incident occurred and indicated that it is used by ATV riders to cross from one area to another due to the existence of a river.  He testified that the barrier at the end of the road was never completely across the street so ATV riders are able to go around it.

{¶8}    Jeremy Kibler, Maras' cousin, arrived at the scene of the accident, and Lichty stated, "I went to hit the brakes and I slid."  He described there were "three barricades" on West Liberty but they were off to the side and a truck could fit through the space at the end of the road.

{¶9}    Girard City Engineer Dennis Meek testified that in the 1920s, a viaduct was completed which eliminated public access to cross the railroad at the end of West Liberty Street.  A 1984 construction drawing showed no public right-of-way existed across the tracks.  Various work had been conducted on West Liberty Street over time, including a project completed in 2017, but not at the end of the street near the railroad tracks.  Relating to repairs to that area, he stated: "I would be wasting city money on a street

3

that's not used. . . [and] is a dead-end street."

{¶10} When asked about how the bricks had separated at the end of the road, Meek testified that he believed the only traffic in that area was four-wheelers or ATVs: "There's no other reason why anybody would ever want to go there. It's an unregistered vehicle on a public street going to private property." He indicated the existence of ATV tracks in the area of the dead end. City employees were unsure when the barrier was erected at the dead end but Meek believed it was placed there to prevent vehicles from going onto the CSX right of way. He indicated that there is a "no outlet" sign at the top of the hill which leads down to the end of West Liberty.

{¶11} Photographs demonstrate that West Liberty Street ends shortly before a gravel area beside the train tracks. They show no road or crossover for traffic over the train tracks. On the right-hand side of the end of the road, there is a concrete barrier and brush/overgrowth. The barrier does not cross the entirety of the road. Around the area of the barrier, the bricks in the road begin to split apart and there is an area of missing bricks with exposed concrete just prior to the area of gravel surrounding the train tracks. Some bricks are scattered or piled in the gravel near the tracks.

{¶12} The trial court issued a Judgment Entry on August 6, 2024, granting Girard's Motion for Summary Judgment. It found that there were no genuine issues of material fact in dispute and Girard was entitled to immunity. It determined that the exception for liability relating to negligent failure to keep public roads in repair and remove obstructions did not apply because Maras was not on a public road at the time of the accident.

{¶13} Maras timely appeals and raises the following assignment of error:

{¶14} "The trial court erred in entering summary judgment in favor of Defendant-Appellee."

4

{¶15} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence . . . that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence . . . construed most strongly in the party's favor."

{¶16} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." *Peer v. Sayers*, 2011-Ohio-5439, ¶ 27 (11th Dist.).

{¶17} Maras argues that the trial court "eschewed the 'three-step analysis,' instead opting to conclude that Appellant Maras never established the second-step 'exception' to immunity because 'Plaintiff's accident did not occur on a public road and therefore Girard cannot be held liable.'"

{¶18} "R.C. Chapter 2744 establishes a three-tier analysis to determine whether a political subdivision is immune from liability." *Ruckman v. Smith*, 2022-Ohio-1813, ¶ 12 (11th Dist.), citing *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556 (2000). "The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or a proprietary function." *Id.* at ¶ 13; R.C. 2744.02(A)(1) ("a political subdivision is not liable in damages in a civil action for injury, death, or loss to person . . . allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function"). "The second tier of the analysis requires a court to determine

5

whether any of the exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." *Ruckman* at ¶ 13. If any such exceptions apply, the third tier examines whether any defenses to liability in R.C. 2744.03 apply. *Id.*

{¶19} The trial court correctly acknowledged the general immunity of political subdivisions and proceeded to consideration of the second tier, whether an exception applies to that general immunity. Having found that no exception existed under R.C. 2744.02(B) to create liability, it was unnecessary to proceed to the third tier.

{¶20} As to the first tier, we observe that a governmental function includes "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds." R.C. 2744.01(C)(2)(e). Under the first tier, Girard is generally immune in its performance of the function here, maintenance and repair of roads and streets.

{¶21} The key issue in the present matter arises in relation to the second tier: whether an exception to general immunity applied pursuant to R.C. 2744.02(B)(3) in relation to the repair of West Liberty Street. That section provides that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads."

{¶22} R.C. 2744.02(B)(3) "imposes a duty on political subdivisions to keep the roads in their control free from conditions that create a danger for *ordinary traffic on the regularly traveled portion of the road.*" (Emphasis added.) *Engle v. Salisbury Twp.*, 2004-Ohio-2029, ¶ 18, citing *Mfrs. Natl. Bank of Detroit v. Erie Cty. Road Comm.*, 63 Ohio St.3d 318, 321 (1992); *Snay v. Burr*, 2021-Ohio-4113, ¶ 18. It has also been held that "[l]iability . . . is not imposed upon a municipality where the condition in question does not render a

6

street unsafe for usual and ordinary modes of travel." *Lovick v. Marion*, 43 Ohio St.2d 171, 172-173 (1975). *See Mfrs. Natl. Bank* at 321 (applying case law relating to municipal liability in relation to political subdivision liability). Further, a political subdivision does not negligently fail to keep part of a road in repair where it has not "been improved and made passable for vehicular use" since the "public has no right to drive upon these types of roads." *Shope v. Portsmouth*, 2012-Ohio-1605, ¶ 18 (4th Dist.).

**{¶23}** Maras was a passenger on an ATV driven on West Liberty Street. She alleged that the accident occurred when the ATV could not turn or operate properly due to the broken bricks at the end of the road. There is no question that there was an uneven area at the end of the road where the brick road had separated from the concrete underneath and that bricks were scattered around that area, including in the gravel surrounding the train tracks.

**{¶24}** While the foregoing is true, facts demonstrated that the area where Maras traveled on the ATV and encountered the dislodged bricks was the dead end of West Liberty. It did not lead to any further residences or roads and preceded a gravel area surrounding train tracks. Lichty drove into this area after passing a concrete barrier and while turning onto property owned by CTX immediately beside railroad tracks. It is reasonable to conclude that this was not an area where the public would have a right to drive or one that a typical driver would have occasion to travel in their vehicle. *See Snay*, 2021-Ohio-4113, at ¶ 25 (hazards off the road do not interfere with the public's use of a road since they are ones "a motorist properly using the usual and ordinary course of travel would not come into contact with") (citation omitted). This is further evidenced by the fact that a concrete barrier had been placed on the road adjacent to the area where the bricks had begun to separate. While the barrier did not extend entirely across the road, it

7

demonstrated that the road ended at that area, which was buttressed by the existence of a "no outlet" sign on West Liberty.

{¶25} Further, as noted above, the Ohio Supreme Court held that the duty for political subdivisions under R.C. 2744.02(B)(3) is to prevent danger to "ordinary traffic" that is on a "regularly traveled portion of the road." *Mfrs. Natl. Bank*, 63 Ohio St.3d at 322. Ordinary traffic has no reason to travel onto the portion of the road where Maras and Lichty drove as it was at the end of the road, immediately followed by gravel and unpassable railroad tracks. It appears from the testimony that ATV drivers, including Lichty, used this area to drive by the railroad tracks to other paths of ATV travel. However, it cannot be concluded that this is "ordinary traffic" subject to protection under R.C. 2744.02(B)(3), particularly given the fact that the use of ATVs on roads such as West Liberty Street is prohibited by ordinance. Girard Codified Ordinances 375.03(a)(1), (3), and (5), provides that no "all purpose vehicle," which includes "all-terrain vehicles" shall be operated, inter alia, "[o]n any street or highway except for emergency travel," "[o]n any private property," or "[o]n tracks or right of way of any operating railroad." In the absence of authority to the contrary, we do not find that the fact that it was known that ATV drivers sometimes used this road in contravention of the ordinances rendered it ordinary traffic for the purposes of applying R.C. 2744.02(B)(3). We do not find that the scope of this exception was intended to ensure that roads be maintained for the purposes of ATV riders to follow a dead end road to travel on private property owned by a railroad. While political subdivisions can be held liable for damages sustained in roadways in appropriate circumstances, it has also been recognized that the General Assembly has previously narrowed the scope of R.C. 2744.02(B)(3) in "a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." *Howard v. Miami Twp.*

8

*Fire Div.*, 2008-Ohio-2792, ¶ 25-26.

**{¶26}** Maras argues that she does not maintain that the accident occurred on the street itself but merely that the city's failure to keep the street in repair resulted in the accident because a brick became lodged in her wheel. It is accurate that R.C. 2744.02(B)(3) relates to damages "caused by [a political subdivision's] negligent failure to keep public roads in repair" and does not mention that the damages must occur on the road itself. That being the case, it is still required that the accident be the result of the condition of a road which is subject to the exception, i.e., one regularly traveled upon by ordinary traffic as discussed above. Although the trial court mentioned specifically that the accident did not occur on the road rather than discussing whether the road condition caused the accident, we afford no deference to its findings in conducting de novo review. *See Oliveri v. OsteoStrong*, 2021-Ohio-1694, ¶ 28 (11th Dist.) (the appellate court will "affirm the trial court's judgment if any valid grounds are found on appeal to support it, even if the trial court failed to consider those grounds") (citation omitted).

**{¶27}** Maras cites *Steele v. Auburn Vocational School Dist.*, 104 Ohio App.3d 204, 207 (11th Dist. 1994), in support of the proposition that the site of the collision is not relevant if the condition of the road caused the damages. *Steele* does not address this issue but discusses immunity from liability relating to whether supervision of a school parking lot was a discretionary function. Nonetheless, her arguments on this issue lack merit for the reasons discussed above.

**{¶28}** Finally, we note that Girard filed a Notice of Supplemental Authority, citing the Ohio Supreme Court decision of *Schlegel v. Summit Cty*, 2024-Ohio-5678. *Schlegel* addressed the question of whether political subdivision immunity applied where the plaintiff was "not a motorist or user of the roadway injured by a roadway condition." *Id.* at

9

¶ 1. It determined that a political subdivision did not have immunity where a blocked culvert caused damage to a home situated by the roadway although the property damage did not occur on the roadway itself. *Id.* at ¶ 20-21. *Schlegel* is distinguishable from the present matter. While the Supreme Court determined that R.C. 2744.02(B)(3) does not contain a limitation restricting the class of person injured to only motorists or users of the roadway, the present case does not turn on the issue of whether the loss was suffered by a user of a roadway but instead only whether the damage that occurred was caused by the failure to repair a public road.

{¶29} Having found that there is no applicable exception to immunity under R.C. 2744.02(B), it is unnecessary to proceed to an analysis under the third tier.

{¶30} The sole assignment of error is without merit.

{¶31} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, granting summary judgment in favor of the City of Girard, is affirmed.

ROBERT J. PATTON, P.J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2024-T-0065